# US DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION-DETROIT

**UNITED STATES OF AMERICA**

                **Plaintiff,**

**v.**                                                   **Case No. 22-cr-20601**
                                                         **Hon. Jonathan Grey**

**ZAMAN ALSHAFEY,**

                **Defendant.**

---

| UNITED STATES ATTORNEY | AMBERG & AMBERG, PLLC |
|---|---|
| Regina McCullough | James W. Amberg (P68564) |
| Gjon Juncaj | Attorney for the Defendant |
| Assistant United States Attorneys | 32121 Woodward Ave, Ste PH |
| 211 W. Fort Street, Suite 2001 | Royal Oak, MI 48073 |
| Detroit, MI | 248.681.6255 office |
| 313.226.9100 office | 248.681.0115 fax |
| | www.amberglaw.net |

---

## MOTION TO SUPPRESS EVIDENCE

### *Certificate of Service*
### *Brief in Support*

---

Now comes Zaman Al-Shafey, by his attorney, James Amberg, and respectfully requests this Court to suppress evidence seized by law enforcement officials during the execution of a search warrant on April 29, 2021, two residential and one commercial property, all located in Wayne County. It is argued that the search warrant affidavit lacked the requisite probable cause necessary to effectuate a search, and as such, all evidence stemming from the search, namely the approximately $10,000,000.00 in cash discovered, must be suppressed. Additionally, it is argued that as to the residential properties, there was an

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

insufficient nexus between the crimes alleged and the homes.  Finally, a *Franks*

hearing is requested for numerous reasons.

Pursuant to LCR 7.1, counsel for Mr. Al-Shafey has previously discussed the

filing of this Motion with AUSA Regina McCullough.  It is counsel's understanding

from these conversations that the Government opposes this Motion.

Respectfully submitted,

*/s/ James Amberg*

_____

AMBERG & AMBERG, PLLC
James W. Amberg P68564
Attorneys for the Defendant
32121 Woodward Avenue, PH
Royal Oak, MI 48073
248.681.6255
248.681.0115 (fax)

April 28, 2023

### Certificate of Service

I, James W. Amberg, attorney for the Defendant, certify that on April 28,
2023, this Motion was served upon the United States Attorney's Office and the
Clerk of the Court via efile.

*/s/ James Amberg*

_____

James W. Amberg
Attorney at Law P68564

# US DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION-DETROIT

**UNITED STATES OF AMERICA**

        **Plaintiff,**

**v.**                                                 **Case No. 22-cr-20601**
                                                     **Hon. Jonathan Grey**

**ZAMAN ALSHAFEY,**

        **Defendant.**

---

| UNITED STATES ATTORNEY | AMBERG & AMBERG, PLLC |
|---|---|
| Regina McCullough | James W. Amberg (P68564) |
| Gjon Juncaj | Attorney for the Defendant |
| Assistant United States Attorneys | 32121 Woodward Ave, Ste PH |
| 211 W. Fort Street, Suite 2001 | Royal Oak, MI 48073 |
| Detroit, MI | 248.681.6255 office |
| 313.226.9100 office | 248.681.0115 fax |
| | www.amberglaw.net |

---

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

### BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE

### I.    INTRODUCTION

On April 29, 2023, DEA and Dearborn Police, via a search warrant, searched three properties connected to Mr. Al-Shafey.  Two were residential and one was a business.  The allegations leading up to the search were that Mr. Al-Shafey, a pharmacist, was engaged in illegal narcotic distribution, namely promethazine mixed with codeine.[1]  The results of these searches were the discovery of a large sum of cash, as well as other items of evidentiary value.  Mr. Al-Shafey contends that the underlying warrant lacked probable cause in general, as well as a lack of a sufficient nexus between the residential properties and the alleged illegal conduct.

---

[1] This type of pharmaceutical product is mixed with soda and candy to create the street drug "purple drink."

Finally, in at least one portion of the search warrant affidavit, it is argued that the information alleged was obtained by officers without first seeking a warrant. As such, Mr. Al-Shafey argues that the evidence discovered during the searches must be suppressed.

## II.   STATEMENT OF CASE AND RELEVANT FACTS

### A. <u>Pre-warrant</u>

The case against Mr. Al-Shafey started in February of 2021, when DEA agents raided the properties of two individuals, the McClinton brothers, in Detroit and discovered large amounts of cash, guns, narcotics, and bottles of promethazine. In what appears to be the raid bearing the most fruit, agents discovered 1,459 pints of promethazine. Of these, only 11 contained codeine.

### B. <u>Warrant and Affidavit</u>

From this, agents viewed phones taken and discovered text message communications with a number that has since been associated with Mr. Al-Shafey. Per the search warrant affidavit, it appears that these texts were discussing the sale of promethazine. (See **Exhibit A**, Search Warrant and Affidavit) Viewing the affidavit, it does not appear that these texts actually mentioned promethazine with codeine, which is an important distinction as promethazine alone is not a controlled substance.

From the phone number, the agents identified Mr. Al-Shafey as a potential suspect. They discovered that the Dearborn Police Department had received information that that Mr. Al-Shafey was allegedly selling controlled substances and prescriptions illegally through his pharmacy he owned, named MedPro Pharmacy. Surveillance was established at MedPro, located at 15580 Middlebelt, Livonia. Agents or officers, it is unclear from the affidavit whether this was Dearborn police or the DEA, witnessed Mr. Al-Shafey receive 9 boxes from FedEx. At some point

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

later, Mr. Al-Shafey was seen throwing the empty boxes away.  A short time later, an individual later identified as Somalia Gandy-Dix arrived at the pharmacy and Mr. Al-Shafey loaded boxes into her car.

Ms. Gandy-Dix left the pharmacy and was followed to a residence in Detroit, where an unknown individual came out of the house and retrieved boxes from her vehicle.  She then left and drove to a hotel parking lot in Madison Heights, where another individual, Dario Stoval, unloaded more boxes out of her car.  In both of these circumstances, the affiant alleged that the short duration of these interactions were indicative of the sale of narcotics.

Ms. Gandy-Dix was then stopped by law enforcement.  A search of her vehicle resulted in the seizure of nine 12 bottle boxes of promethazine HCl.  Again, promethazine is not a controlled substance.

Meanwhile, officers conducted a trash pull at MedPro and discovered labels and an invoice had numbers that matched the boxes discovered with Ms. Gandy-Dix and Mr. Stoval.

Agents then discovered three bank accounts connected to Mr. Al-Shafey, where his occupation was listed as pharmacist/MedPro Pharmacy.  The total cash deposits in these accounts from 9/20 to 4/21 were approximately $1,300,000.00. The affiant claimed some of the cash deposits were structured in amounts under $10,000.00.  The affiant then alleged that this cash structuring was indicative of narcotic trafficking and done to avoid detection by law enforcement by co-mingling funds with legitimate funds.

Agents also discovered the MedPro was a legitimate pharmacy that was permitted to prescribe schedule 2-5 controlled substances and was registered with the DEA.  Mr. Al-Shafey was the person who signed the registration.  Agents further viewed Mr. Al-Shafey's name in the Michigan Automated Prescription

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

5

System and discovered that he prescribed what is believed to be a completely normal amount of controlled substances expected of a pharmacist. The affiant did not make any claims the amounts were higher than normal.

The affiant then discussed previous law enforcement encounters between Mr. Al-Shafey and the Dearborn police department. Of import to this case, ¶27 alleged that on March 6, 2021, during a domestic violence complaint, officers had been present at apartment #221E, 22241 Michigan Avenue in Dearborn, where they had spotted an open box. In the box were bundles of US currency. It is alleged that the search of the apartment was not consented to by Mr. Al-Shafey and his then-wife Doha Alkaygani did not have permission to allow officers to enter the property.

Specific to this issue, at the time of the March 6, 2021 search of the apartment, Mr. Al-Shafey and his then wife were in a heated custody battle over their young child. The day before, May 5, 2021, Ms. Alkaygani had arrived at Mr. Al-Shafey's apartment to discuss the custody issue. Things digressed quickly when Ms. Alkaygani through a towel at Mr. Al-Shafey. Mr. Al-Shafey then kicked Ms. Alkaygani out of the apartment. He then went to the gym and while he was gone, Ms. Alkaygani snuck into the apartment and locked herself into a bedroom, with their child. Arriving back to the apartment, Mr. Al-Shafey discovered Ms. Alkaygani's presence and rather than do anything to escalate the situation further, simply slept out on the couch. The next day Ms. Alkaygani exited the room, leaving their child, and left the apartment. An hour later, Mr. Al-Shafey heard a knock on the door and was greeted by Dearborn officers. The officers took Mr. Al-Shafey out of his apartment and then, without permission, entered the apartment with Ms. Alkaygani under the auspices of retrieving her things. However, during this encounter, it is believed that Ms. Alkaygani's father was present and telling

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

6

officers they would find illegal contraband in the apartment.  Mr. Al-Shafey was arrested, but eventually let go as the prosecutor did not proceed with criminal charges.

Regarding 7030 Oakman, Dearborn, the affidavit indicates that a police report listed Mr. Al-Shafey's address as this property.  A few days later, on April 21, 2021, an agent drove by the property and observed somebody matching Mr. Al-Shafey's physical description.  Agents also discovered that the Bank of America accounts listed Mr. Al-Shafey's mailing address as the Oakman property.

### C.  Fruits of the Searches

The properties were searched.  At the Michigan Avenue apartment, Mr. Shafey was discovered.  In the apartment, there was some evidence of consequence, such as labels and mailings.  However, during this encounter, a car key was taken from Mr. Al-Shafey and his vehicle was searched, where a large amount of money, approximately $940,000.00 was discovered.

In the Oakman property, the agents discovered $9,642,684.00.

### D.  Observations of Search Warrant Affidavit

Mr. Al-Shafey would reiterate that promethazine is not a controlled substance.  It is believed that the affiant who drafted the affidavit surely knew this.  Nonetheless, the affidavit is replete with references to narcotic trafficking, even though the evidence certainly suggested that at most, Mr. Al-Shafey was selling promethazine, which is not a controlled substance.

## III.   ARGUMENT

### A.  The Warrant Affidavit Lacked Probable Cause

The Fourth Amendment directs that a search warrant may only be issued "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the ... things to be seized." US Const

amend IV  Probable cause exists if "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Peffer v Stephens*, 880 F3d 256, 263 (6th Cir 2018)(quoting *Greene v Reeves*, 80 F3d 1101, 1106 (6th Cir 1996))   However, even when a search is conducted without probable cause, the evidence will not be suppressed if the officers relied on the magistrate's determination of probable cause in good faith. *United States v Leon*, 468 US 897, 922 (1984)

When presented with an application for a search warrant supported by an affidavit, a magistrate must examine the four corners of the affidavit, consider the totality of the circumstances, and "make a practical, common-sense decision" about whether probable cause exists for the search. See *Illinois v Gates*, 462 US 213, 238 (1983); *United States v McCoy*, 905 F3d 409, 416 (6th Cir 2018)

Viewing the warrant affidavit in the case at hand it is argued that there was an insufficient level of probable cause that "evidence of Al-Shafey's suspected drug distribution and money laundering currently exists at" the properties in this case. (**Exhibit A**, Pg 13)  Reading the four corners of the affidavit, it is argued that there was no evidence that Mr. Al-Shafey had actually distributed illegal narcotics, as was discussed throughout the affidavit.  As has been discussed, promethazine is not a controlled substance.  To make it a controlled substance, a controlled substance, such as codeine, has to be added to it.  There was no evidence in the affidavit that suggests that Mr. Al-Shafey was adding anything to the promethazine bottles.  This notion was seconded by the fact that Ms. Garby-Dix was discovered with promethazine, which was not a controlled substance.  The affidavit does not discuss how the sale of a non-controlled substance could be a crime, let alone allow for a multi-property search.  Even the affiants claims concerning the

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

deposited money must be looked at in a normal way, as the deposits seem consistent with running a pharmacy business.  There was no other evidence that Mr. Al-Shafey had illegally sold any controlled substance.  As such, the affiant's evidence of claimed of probable cause failed to rise to the necessary level.

If the Government argues good faith, it is not applicable in this situation because the affidavit submitted to the Hamtramck Judge was bare bones and any officer or agent would have known the affidavit lacked the requisite probable cause for the simple reason that the evidence clearly suggested Mr. Al-Shafey selling something that was not a controlled substance.

B.  <u>The Warrant Lacked a Sufficient Nexus to the Residential Properties</u>

The Fourth Amendment requires the warrant applicant to "demonstrate a nexus between the evidence sought and the place to be searched." *United States v Brown*, 828 F3d 375, 382 (6th Cir 2016)(internal citations omitted)  The Sixth Circuit has repeatedly cautioned that "[t]he connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *Id*. "[I]f the affidavit fails to include facts that directly connect the residence with the suspected [criminal] activity, or the evidence of this connection is unreliable," a magistrate judge cannot infer that evidence of a crime will be found in a suspect's home. *Id* at 384

Any officer working in this jurisdiction knows "[t]he critical element in a reasonable search is not that the owner of the property is suspected of a crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v Stanford Daily*, 436 US 547, 556 (1978); see also *Id* at 556, n6  In *Zurcher*, the Supreme Court made clear that the mere fact a person is suspected of committing a crime is insufficient to conclude "the specific 'things' to be searched for and

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

seized are located at the property to which entry is sought." *Id* at 556  Following this guidance, the Sixth Circuit rejected "the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." *United States v Frazier*, 423 F3d 526, 532-33 (6th Cir 2005)

Regarding the Oakman property, there was insufficient evidence presented that anything criminal would be discovered.  The warrant affidavit only mentioned the property in passing and there was very little linking the property to any alleged criminal activity.  The agents claim somebody that looked like Mr. Al-Shafey was spotted there.  Nothing else suggests he was there outside of some mailings and other reports.  The affidavit does not make clear why there will be illegal contraband here, or even if Mr. Al-Shafey actually lives at the property.

As to the Michigan Avenue apartment, there was no evidence presented of illegality outside of the alleged bundle of money spotted during an illegal search of the apartment.  Like the Oakman property, there was an insufficient nexus presented in the affidavit that there was reasonable cause to believe evidence of a crime would be discovered there.

C.  <u>The Search of Mr. Al-Shafey's Vehicle Was Impermissible</u>

The Fourth Amendment requires that a warrant describe with "particular[ity] ... the place to be searched and the persons or things to be seized." *Md. v Garrison*, 480 US 79, 84 (1987)(quoting US Const amend IV)  A warrant sufficiently particularizes the place to be searched if the executing officers "can, with reasonable effort, ascertain and identify the place intended." *Steele v United States*, 267 US 498, 503 (1925)  Additionally, an affidavit or attachment to the warrant may cure an insufficiently particularized warrant. See ex *Mass v Sheppard*, 468 US 981, 990 n7 (1984)

10

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

The particularity requirement limits the scope of the authorized search, "makes general searches … impossible[,] and prevents the seizure of one thing under a warrant describing another." *Marron v United States*, 275 US 192, 196 (1927)  And the scope of the search is tied directly to the finding of probable cause that authorizes it: "The scope of a search is limited to those places in which there is probable cause to believe an item particularly described in the warrant might be found." *Horton v California*, 496 US 128, 143 n1 (1990)(Brennan, J., dissenting) This limiting principle cabins the authority of the police, so that "nothing is left to the discretion of the officer executing the warrant." *Marron*, 275 US at 196

The Fourth Amendment prohibits a magistrate from issuing a "general warrant," *Stanford v State of Tex.*, 379 US 476 (1965), that is, a license to engage in a "general, exploratory rummaging in a person's belongings," *Coolidge v New Hampshire*, 403 US 443, 467 (1971); see also *Ellison v Balinski*, 625 F3d 953, 958 (6th Cir 2010)(explaining that "[t]he history of the Fourth Amendment [demonstrates that it] was enacted in part to curb the abuses of general warrants, devices which provided British officers with broad discretion to search the homes of citizens of the Colonies for evidence of vaguely specified crimes"); see also *Warden, Md. Penitentiary v Hayden*, 387 US 294, 301 (stating that the Fourth Amendment "was a reaction to the evils of the use of the general warrant in England and the writs of assistance in the Colonies, and was intended to protect against invasions of 'the sanctity of a man's home and the privacies of life,' from searches under indiscriminate, general authority" (quoting *Boyd v United States*, 116 US 616, 630 (1886)))

"Warrants authorizing the search of 'all vehicles' on a particular property are 'particularly vulnerable to challenge.'" *United States v Keeling*, No. 3:16-CR-00127-TBR, 2017 WL 2486353, at *7 (WD Ky June 8, 2017), aff'd, 783 F App'x

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

517 (6th Cir 2019)(referencing 2 Wayne R. LaFave, Search & Seizure § 4.5(d)(5th ed 2004))  This is "because the Fourth Amendment mandates that a warrant must "particularly describ[e] ... the persons or things to be seized." *Id* (quoting US Const amend IV)

The warrant at hand simply indicated that law enforcement was permitted to search "Any/all vehicles accessed by keys/key fobs located inside the location."  It is argued that this provision was far too vague and essentially created a general warrant that lacked the particularities necessary to allow for a lawful search.  As such, the money discovered in the vehicle was unlawfully seized and must be suppressed.

D. A *Franks* Hearing is Requested Concerning the Affidavit

In *Franks v Delaware*, 438 US 154 (1978), the United States Supreme Court recognized a defendant's right to challenge the sufficiency of an executed search warrant on the basis that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and ... the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 US at 155–156  To facilitate this challenge, the case gave defendants a "limited right to an evidentiary hearing concerning the veracity of the affidavit" in support of a search warrant. *United States v Fowler*, 535 F3d 408, 415 (6th Cir 2008)

*Franks* extends to circumstances in which a defendant contends that the affidavit supporting a search warrant omitted relevant information. *Id*  Thus, a defendant may be entitled to a Franks hearing when facts were omitted in a warrant application—but only in "rare instances." *Mays v City of Dayton*, 134 F3d 809, 815 (6th Cir 1998)  A defendant is entitled to a Franks hearing based on alleged omissions "if and only if (1) the defendant makes a substantial preliminary

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit, and (2) a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it." *Fowler*, 535 F3d at 415

Mr. Al-Shafey first argues that ¶27 of the affidavit should be removed.  This allegation concerns the bundles of money spotted at the Michigan Avenue apartment on March 6, 2021.  It is argued that the officers' entry into the home was non-consensual and without any possible exception to the warrant requirement.  Mr. Al-Shafey's ex-wife did not live at the apartment at the time and was not allowed to be there, and was not actually there when the officers arrived.  The officers did not have a search warrant, did not have exigent circumstances, and did not obtain permission from Mr. Al-Shafey to enter.  Their subsequent actions of looking around the apartment was unlawful, and their discoveries are likewise inadmissible.  Thus it is argued that a hearing is required to determine whether this search took place in an unlawful manner, and if so, ¶27 must be removed from the affidavit.

As to the remaining parts of the affidavit, there is an overarching argument that the affidavit materially omitted key information that promethazine is not a controlled substance.  Instead, the affiant urges the reviewing judge to make findings that the actions of Mr. Al-Shafey were consistent with narcotic trafficking.  This was contrary to the evidence presented in the affidavit, but because this fact was omitted, the reviewing court was left to assuming that promethazine sales were the same thing as narcotic sales, which of course they are not.  As such, it is argued that the Court conduct a *Franks* hearing and at the end of the hearing, add to the affidavit the non-controlled substance nature of promethazine, and then suppress the evidence from all three properties.

Respectfully submitted,

*/s/ James Amberg*

AMBERG & AMBERG, PLLC
James W. Amberg P68564
Attorneys for the Defendant
32121 Woodward Avenue, PH
Royal Oak, MI 48073
248.681.6255
April 28, 2023                          248.681.0115 (fax)

# Exhibit A

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

State of Michigan                                                                                    Page 1
                                        SEARCH WARRANT
County of Wayne              DEA Detroit Special Agent Louis Scirri Jr., affiant states that:

**To the Sheriff or any peace officer of said county: Wayne**

      **Affiant, having subscribed and sworn to an affidavit for a Search Warrant, and I having under oath examined Affiant, am satisfied that the probable cause exists:**

      **THEREFORE, IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN, I command that you search the following described place:**

Location 1 – 22241 Michigan Avenue #221E, Dearborn, Michigan.  A one-bedroom loft located within the "Lofts at West Village" building on the second floor.  The loft complex is labeled, "The Lofts at West Village."  The numbers "22241" are clearly displayed in white above the building entrance.  The numbers/letters, "Loft 221E" are clearly displayed in blue to the left of the gray loft entrance door.  Any/all vehicles accessed by keys/key fobs located inside the location.

Location 2 - 7030 Oakman Boulevard, Dearborn, Michigan.  A single-family residence constructed of red brick.  The numbers "7030" are clearly engraved in black on a white stone located to the left of the front door.  The residence has a detached garage.  Any/all vehicles accessed by keys/key fobs located inside the location.

Location 3 – 15580 Middlebelt Road, Livonia, Michigan.  A business with a sign "MEDPRO PHARMACY" above the business entrance.  The numbers "15580" are clearly displayed in black above the business entrance.  Any/all vehicles accessed by keys/key fobs located inside the location.

**and to seize, secure, tabulate and make return according to law the following property and things:**

All books, records, receipts, notes, ledgers, and other papers relating to the procurement, distribution, storage and transportation of controlled substances, to include records showing the phone numbers of customers, and the amount of controlled substances "fronted" to various customers along with running totals of debts to customers; receipts, such as credit card bills, parking stubs, hotel reservations/records, airline tickets, gas receipts and various notes; packaging materials for controlled substances; address books and/or telephone numbers in papers that reflect the names, addresses, and/or telephone numbers of

_____
**AFFIANT**

**A Search Warrant Return must be filed with the Prosecutor's Office for every Search Warrant which is authorized.**

Subscribed and sworn to before me and issued under my hand this 28th Day of April, 2021.   11:11am

Approved:

/s/ Anna Bickerstaff P82215 - 4/28/2021

**Assistant Prosecuting Attorney**            **Judge/Magistrate**
**Page 1 of 13**                              **County of Wayne**

SW_0094

State of Michigan                                                                      Page 2

**SEARCH WARRANT**

County of Wayne          DEA Detroit Special Agent Louis Scirri Jr., affiant states that:

their criminal associates in the drug trafficking organization, even if said items are in code; all paperwork, ledgers, and records may show residency or ownership to include bills, canceled envelopes, driver's license, keys, and deeds or pre-recorded bills, fingerprints and palm prints; any and all records may show the location of any and all safe deposit boxes; any and all keys which may fit any and all safe deposit boxes; any and all records or documents* pertaining to controlled substances; any safe utilized to store controlled substances and or proceeds from trafficking controlled substances. Currency, financial instruments, precious metals, other items of value, or items obtained through the distribution of controlled substances, and cashier's checks/money orders; home and automobile titles. All photographic or recorded material may show evidence of trafficking in controlled substances. All firearms.

*As used above, the terms records or documents includes records or documents which were created, modified or stored in electronic or magnetic form and any data, image, or information that is capable of being read or interpreted by a computer. In order to search for any such items, searching agents may seize and search the following:

Any computer hardware, cellular telephone, digital camera or computer-related equipment capable of creating or storing information in electronic form; Any computer peripheral used to facilitate the transmission, creation, display, encoding or storage of information, images and data including word processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners; Any magnetic or electronic storage device, including but not limited to, floppy diskettes, hard disks, backup tapes, CD-ROM's, DVD-ROM's, Zip disks, optical disks, printer buffers, smart cards, flash memory, electronic dialers, Bernoulli drives, or electronic notebooks; Computer software, documentation, operating logs and instruction manuals relating to the operation of the computer hardware and software to be searched; Application software, utility programs, compilers, interpreters, and other programs or software used to facilitate direct or indirect communication with the computer hardware and software to be searched; Any physical keys, encryption devices and similar physical items that are necessary to gain access to the computers and/or electronic devices to be searched or are necessary to gain access to the programs, data, and information contained on the computer and/or electronic device to be searched; Any passwords, password files, test keys, encryption codes or other computer codes necessary to access the computers and/or electronic devices to be searched or to convert any data, file or information on the computer and/or electronic device into a readable form; Electronically stored communications or messages, including any of the items to be found in electronic mail ("e-mail").

_____
**AFFIANT**

**A Search Warrant Return must be filed with the Prosecutor's Office for every Search Warrant which is authorized.**

**Subscribed and sworn to before me and issued under my hand this 28th Day of April, 2021.**

**Approved:**

/s/ Anna Bickerstaff P82215 - 4/28/2021

_____   P68217

**Assistant Prosecuting Attorney**              **Judge/Magistrate**
**Page 2 of 3**                                          **County of Wayne**

State of Michigan                                                    Page 3

                         SEARCH WARRANT
County of Wayne          DEA Detroit Special Agent Louis Scirri Jr., affiant states that:

**The following facts are sworn to by Affiant in support of the issuance of this warrant:**

Your Affiant is a Special Agent of the Drug Enforcement Administration ("DEA") assigned to the Detroit Field Division. As such, Affiant is a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). Affiant has been a Special Agent with DEA for approximately 15 years, during which time Affiant has specialized in investigations involving drug trafficking and money laundering. Affiant has received specialized training on the subjects of drug trafficking and money laundering from the DEA and has been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. Prior to becoming a Special Agent, Affiant was an Officer in the United States Marine Corps.

Affiant has received specialized training in various aspects of drug law enforcement and drug related asset investigations, including the identification, locating, seizure and forfeiture of proceeds derived from violations of State and Federal narcotics laws. Affiant has personally been involved in numerous drug investigations. The affiant has attended schools and seminars dealing with the use, sale, manufacture, identification and distribution of controlled substances. Affiant's primary duties are the investigation of controlled substance trafficking and money laundering. Affiant is familiar with the unlawful use, production, concealment, manufacture and transportation of narcotics, dangerous drugs and illegal gained assets. Affiant is a law enforcement officer empowered to conduct investigations and make arrests for narcotic violations of the laws of the State of Michigan and Title 21, United States Code.

Based on my training and experience and conversations with other law enforcement personnel, I am familiar with narcotic traffickers' methods of operation, including the distribution, storage and transportation of narcotics, the collection of proceeds or narcotics trafficking, and the methods of money laundering used to conceal the nature of the proceeds. I have received training and have collaborated with other law enforcement officers on investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as related money laundering involving the proceeds of unlawful activities and conspiracies associated with criminal narcotics. The Affiant knows from his specialized training and experience the following:

                                                    _____
                                                              **AFFIANT**

**A Search Warrant Return must be filed with the Prosecutor's Office for every Search Warrant which is authorized.**

**Subscribed and sworn to before me and issued under my hand this 28th Day of April, 2021.**

**Approved:**

/s/ Anna Bickerstaff P82215 - 4/28/2021

**Assistant Prosecuting Attorney**                  Judge/Magistrate
**Page 3 of 3**                                     County of Wayne

                                                              SW_0096

State of Michigan                                                                                    Page 4

                                          SEARCH WARRANT
County of Wayne                DEA Detroit Special Agent Louis Scirri Jr., affiant states that:


Drug Traffickers maintain books, records, receipts, notes, ledgers, and other papers relating to the
procurement, distribution, storage and transportation of controlled substances, to include records
showing the phone numbers of customers, and the amount of controlled substances "fronted" to
various customers along with running totals of debts to customers.  They frequently maintain
receipts such as credit card billings, parking stubs, hotel reservations/records, airline tickets, gas
receipts and various notes.  Items used to package controlled substances are also frequently
maintained by drug traffickers.  It is also common for these traffickers to maintain electronic
devices that are used to facilitate their criminal activities, which include, but are not limited to,
mobile telephones, smartphones, tablets, police scanners, computers, and money counters.

It is common for drug traffickers to conceal drug records, drug proceeds and the other items
described above within their residences, garages, safety deposit box(es), businesses and
automobiles, and also in a like manner, with their criminal associates in order to conceal such
items from law enforcement authorities.

Persons engaged in drug trafficking commonly conceal large amounts of currency, financial
instruments, precious metals, and other items of value.  It is common for traffickers to purchase
items that cost over ten thousand dollars.  The reporting requirements, commonly referred to as
CTR's, for transactions over ten thousand dollars cause tremendous problems for drug traffickers
when they attempt to negotiate their illegal profits at a financial institution.  Thus, often,
traffickers will violate federal structuring/currency transaction reporting laws (Title 31 United
States Code Section 5324) by obtaining several cashier's checks/money orders in small
increments from several institutions.  Often, the traffickers utilize "smurfs" to purchase checks
and/or money orders that generate receipts.  The proceeds of drug transactions, and evidence of
financial transactions relating to obtaining, transferring, secreting, or spending large sums of
money and other assets obtained through engaging in narcotics activities, are maintained by drug
traffickers in their residences, businesses, automobiles, and other locations maintained for the
purpose of concealing and facilitating their criminal activities.

Drug traffickers often purchase and/or title their assets in fictitious names, aliases, names of
relatives, criminal associates or business entities to avoid detection of these assets by government
agencies.  Even though these assets are in the names of persons other than the drug trafficker, the

                                              _____
                                                          AFFIANT

**A Search Warrant Return must be filed with the Prosecutor's Office for every Search Warrant which is authorized.**

**Subscribed and sworn to before me and issued under my hand this 28th Day of April, 2021.**

**Approved:**

/s/ Anna Bickerstaff P82215 - 4/28/2021

                                              _____
**Assistant Prosecuting Attorney**                          **Judge/Magistrate**
**Page 4 of 3**                                             **County of Wayne**

State of Michigan                                                              Page 5
                                    SEARCH WARRANT
County of Wayne          DEA Detroit Special Agent Louis Scirri Jr., affiant states that:

trafficker usually owns and continues to use these assets, maintaining dominion and control over
them.

The sale of controlled substances generates large amounts of money.  Drug traffickers must
maintain on hand, amounts of United States currency in order to maintain and finance their on-
going drug business.  Drug traffickers often secrete their money in locations to which they have
ready access, i.e. safe deposit boxes, businesses, garages, storage facilities, automobiles and
residences.

Drug traffickers commonly maintain firearms to protect themselves, their associates, their drugs,
and their drug proceeds.

Courts have recognized that unexplained wealth is probative evidence of crimes motivated by
greed, in particular, trafficking in controlled substances.  The courts have further recognized that
possession of large sums of questionable currency in small and medium-sized denominations,
along with the manner in which the currency is handled, carried and concealed, may establish
probable cause to believe that there is a substantial connection between the questionable currency
and illegal drug transactions.

It is common in the purchasing, selling and distribution of controlled substances for drug
traffickers to "front" drugs (providing narcotics on consignment) to several clients, causing large
debts to be incurred.  Often these drugs/debts are paid for in installments, over a period of time,
and involve large amounts of currency exchanging hands.  Because of the large amounts of drugs
and debts involved, and to prevent discrepancies, it is necessary for records, such as, but not
limited to, papers, notes, ledgers, journals, and logs, to be maintained by these drug traffickers.
Frequently, these records are kept for lengthy periods of time and concealed where traffickers
have ready access to them, i.e., homes, garages, safety deposit boxes, offices and automobiles.

It is common for drug traffickers to also be involved in violating income tax laws as well as
money laundering statutes.  On the basis of the affiant's training and experience, it is know that
activities of this type require detailed records to be maintained and controlled by the "true owner"
of the drug related assets(s).

                                                    _____
                                                                 AFFIANT

**A Search Warrant Return must be filed with the Prosecutor's Office for every Search Warrant which is authorized.**

**Subscribed and sworn to before me and issued under my hand this 28th Day of April, 2021.**

**Approved:**

/s/ Anna Bickerstaff P82215 - 4/28/2021

                                                    _____
**Assistant Prosecuting Attorney**                          **Judge/Magistrate**
**Page 5 of 13**                                            **County of Wayne**

                                                                              SW_0098

State of Michigan                                                                                        Page 6

SEARCH WARRANT

County of Wayne                    DEA Detroit Special Agent Louis Scirri Jr., affiant states that:

Based on your affiant's training and experience and the experience of other narcotic
investigators, affiant is aware that persons engaged in the sale of one controlled substance will
often times use and/or sell other controlled substances. Many times controlled substance sellers
will not use the substances they are selling but will use other controlled substances instead.

Drug traffickers commonly maintain address books and /or telephone numbers in books, papers,
or electronic devices that reflect the identity, addresses, pager number(s), email address,
telephone numbers, or other identifying information for their criminal associates in the drug
trafficking organization, even if said items are in code.

Drug traffickers frequently use various houses, or storage units, or other concealment locations,
as stash locations to thwart law enforcement efforts to seize contraband and evidence and reduce
any losses that occur in the event that one location is identified.

It is common for persons who traffic in controlled substances to often utilize garages, storage
sheds, and or vehicles located on their curtilage and premises connected to or associated with the
person(s) within the residence, that may be parked on the curtilage or on the street or parking area
adjacent to the residence for the purpose of storing and/or facilitating the trafficking of controlled
substances.

1.  On February 11, 2021, DEA Detroit Agents/Officers executed a State of Michigan Search
    Warrant at the residence of Reginald Lee MCCLINTON II located at 20472 Hull Street,
    Highland Park, Michigan. Officers seized $28,592 USC, five pieces of jewelry, 1,459 pints of
    Promethazine, 3,160 gross grams marijuana, 376 Schedule-II/IV pills, 4 firearms, and two
    vehicles. MCCLINTON was arrested for Possession With Intent to Distribute Promethazine,
    Marijuana, and Schedule-II/IV Controlled Substances. (11) of the pints of Promethazine seized
    from MCCLINTON contained Codeine.

2.  On February 11, 2021, Officers executed a State of Michigan Search Warrant at the residence of
    Recko Armond MCCLINTON – Reginald MCCLINTON's cousin - located at 5743 Buckingham
    Street, Detroit, Michigan. Officers seized $584,352 USC, four pieces of jewelry, 20 pints of

_____
                                                                                        **AFFIANT**

**A Search Warrant Return must be filed with the Prosecutor's Office for every Search Warrant which is authorized.**

**Subscribed and sworn to before me and issued under my hand this 28th Day of April, 2021.**

**Approved:**

/s/ Anna Bickerstaff P82215 - 4/28/2021

**Assistant Prosecuting Attorney**                              **Judge/Magistrate**
**Page 6 of 13**                                                **County of Wayne**

SW_0099

State of Michigan                                                                        Page 7

SEARCH WARRANT

County of Wayne          DEA Detroit Special Agent Louis Scirri Jr., affiant states that:

Promethazine, 185 Schedule-II pills, and one vehicle.  MCCLINTON was arrested for Possession
With Intent to Distribute Promethazine and Schedule-II Controlled Substances.

3. Pursuant to the search warrant executed at Reginald MCCLINTON's residence, Officers seized
   two smartphones.  In one of the smartphones, Affiant observed numerous messages with
   telephone number 586-864-0151 for the timeframe of March 2019 through February 2021
   involving the suspected distribution of Promethazine.  The number was listed in the "Contacts"
   section of the phone as, "Z."

4. Multiple messages referred to "Woo," Woohoo," "Akor," and "nos" that are believed to be slang
   or code words for "Wockhardt," "Akorn," and "Nostrum" – pharmaceutical companies that
   manufacture promethazine and promethazine with codeine.  Quantities were referred to as
   "boxes" and "cases."  The user of telephone number 586-864-0151 stated in multiple messages
   that promethazine was being sent via FedEx.

5. "Wockhardt" and "Nostrum" were among the brands of promethazine seized pursuant to the
   search warrants executed at the residences of Reginald and Recko MCCLINTON on February 11,
   2021.

6. On January 18, 2021, the user of 586-864-0151 sent MCCLINTON a message titled,
   "Phenergan/promethazine update" with a subsequent message that stated, "Yeah it should be
   coming tom pending no delays."

7. On January 22, 2021, the user of 586-864-0151 sent MCCLINTON the following message:
   "Price went up again since wok is almost gone I guess they keep playing with the price till the
   whole market is flushed 935 a case now the guy told me it'll eventually lock at 1k a case...Out of
   my hands Reg."  The term "wok" is believed to refer to "Wockhardt," a promethazine and
   promethazine with codeine manufacturer.  "935 a case" and "1k" a case are believed to be
   wholesale prices per case of product.

8. Affiant observed messages sent by the user of 586-864-0151 to MCCLINTON that referenced
   suspected promethazine orders received by Recko MCCLINTON referred to as "your cousin,"
   "Rico," "Riko," and "Rik."

<i>Louie Sirri</i>

<b>AFFIANT</b>

**A Search Warrant Return must be filed with the Prosecutor's Office for every Search Warrant which is authorized.**

Subscribed and sworn to before me and issued under my hand this 28th Day of April, 2021.

Approved:

/s/ Anna Bickerstaff P82215 - 4/28/2021

**Assistant Prosecuting Attorney**                                      **Judge/Magistrate**
**Page 7 of 13**                                                          **County of Wayne**

State of Michigan                                                                                   Page 8

SEARCH WARRANT

County of Wayne          DEA Detroit Special Agent Louis Scirri Jr., affiant states that:

9. Affiant knows from training and experience that Promethazine and Promethazine with Codeine are commonly diverted for street sale by criminals and are substances that may be abused. Street/end-user prices for Promethazine in the greater Detroit area are approximately $650-750/pint. Street/end-user prices for Promethazine with Codeine are approximately $1,500-2,000/pint. Affiant knows that these prescription-only/controlled substances may be smuggled out of state and re-sold at an even higher mark-up.

10. On April 21, 2021, TFO Dennis Janowicz queried the phone number 586-864-0151 in the Oakland County Courts and Law Enforcement System ("CLEMIS") and observed that the number was associated with Zaman Mohammed ALSHAFFEY. On April 17, 2021, the Dearborn Police Department entered ALSHAFFEY's phone number in conjunction with a police report. The same report listed ALSHAFFEY's address as 7030 Oakman, Dearborn, Michigan.

11. On April 21, 2021, TFO Janowicz observed a male matching ALSHAFEY's physical description at 7030 Oakman, Dearborn, Michigan.

12. On April 21, 2021, TFO Janowicz learned that the Dearborn Police Department Narcotics Unit was investigating ALSHAFEY. The Dearborn Narcotics Unit received information that ALSHAFEY was selling controlled substances and prescriptions illegally through a closed Pharmacy in the city of Livonia (MedPro Pharmacy) at 15580 Middlebelt. Surveillance was established and ALSHAFEY was observed there days in a row. On March 11, 2021, ALSHAFEY was observed receiving a package of 9 large brown boxes from FedEx. ALSHAFEY was observed throwing the same boxes, now empty, into a trash dumpster in front of the pharmacy. Almost immediately after, a female subsequently identified as Somalia GANDY-DIX arrived and ALSHAFEY began placing several smaller brown boxes inside the trunk of her car. ALSHAFEY was continuously going in and out of the business when doing this. GANDY-DIX then left and surveillance was maintained on her.

13. GANDY-DIX drove to a residence in Detroit where a black male exited and retrieved boxes from GANDY-DIX's trunk. GANDY-DIX stayed in the driveway for this interaction and departed after the boxes were retrieved. The short duration of the interaction was consistent with the sale of narcotics. GANDY-DIX then drove to a hotel parking lot in the city of Madison Heights

_Louie Scirri_
**AFFIANT**

**A Search Warrant Return must be filed with the Prosecutor's Office for every Search Warrant which is authorized.**

Subscribed and sworn to before me and issued under my hand this 28th Day of April, 2021.

**Approved:**

/s/ Anna Bickerstaff P82215 - 4/28/2021

**Assistant Prosecuting Attorney**                    Judge/Magistrate
**Page ___ of ___ 3**                                            **County of Wayne**

State of Michigan                                                                                      Page 9

SEARCH WARRANT

County of Wayne              DEA Detroit Special Agent Louis Scirri Jr., affiant states that:

where she met with a black male in a blue Ford Explorer. A subject subsequently identified as Dario STOVAL, retrieved boxes from GANDY-DIX's vehicle. After STOVAL retrieved the boxes, they both departed. The short duration of the interaction was consistent with the sale of narcotics. Officers believe that GANDY-DIX was re-selling the boxes obtained from ALSHAFEY.

14. A traffic stop of GANDY-DIX resulted in the seizure of nine, 12-count boxes of Promethazine HCl (RX only) and approximately $13,000. STOVAL was stopped with two other individuals. All four subjects were subsequently arrested. A search warrant for the Explorer driven by STOVAL was obtained and ten, 12-count boxes of Promethazine HCl were seized.

15. Officers also conducted a trash pull at MEDPRO PHARMACY on March 11, 2021 and recovered labels and an invoice from the boxes officers observed being thrown away by ALSHAFEY. The invoice had numbers matching those of the boxes seized from GANDY-DIX and STOVAL. All the boxes recovered had ripped labels off the top of the boxes.

16. On April 21, 2021, Affiant queried financial databases and discovered that phone number 586-864-0151 was listed by the Bank of America for Zaman ALSHAFEY and Medpro Pharmacy, LLC. Bank of America listed the address of Medpro Pharmacy as 15580 Middlebelt Road, Livonia, Michigan. Bank of America listed ALSHAFEY's mailing address as 7030 Oakman Boulevard, Dearborn, Michigan.

17. Financial records revealed that 586-864-0151, suspected of being utilized by ALSHAFEY, was associated with Bank of America Accounts 375017927076, 375022552818, and 375019799626. ALSHAFEY's occupation was listed as "Pharmacist/Medpro Pharmacy." Records reviewed by your Affiant revealed that ALSHAFEEY conducted cash deposits in these accounts that totaled approximately $1.3 million for the period of September 2020 – April 2021. Many of the deposits were structured in amounts under $10,000.

18. On multiple occasions, multiple cash deposits under $10,000 were made to accounts 375017927076, 375022552818, and 375019799626 within the span of a few days and sometimes on the same date. Your Affiant knows from training and experience in prior investigations that suspected drug distributors launder drug proceeds through financial institutions and that they

**AFFIANT**

**A Search Warrant Return must be filed with the Prosecutor's Office for every Search Warrant which is authorized.**

**Subscribed and sworn to before me and issued under my hand this 28th Day of April, 2021.**

**Approved:**

/s/ Anna Bickerstaff P82215 - 4/28/2021

**Assistant Prosecuting Attorney**                              **Judge/Magistrate**
**Page 9 of 13**                                                **County of Wayne**

State of Michigan

Page 10

SEARCH WARRANT

County of Wayne

DEA Detroit Special Agent Louis Scirri Jr., affiant states that:

often co-mingle legitimate banking activity with illegitimate proceeds in an effort to avoid detection by law enforcement.

19. Your Affiant knows that suspected money launderers often structure their cash deposits and/or withdrawals in amounts under $10,000 in an attempt to avoid the filing of a Currency Transaction Report (CTR). Officers believe ALSHAFEY may have deliberately structured cash deposits in an effort to avoid bank reporting requirements. Furthermore, Officers believe that – even when cash amounts greater than $10,000 were conducted – the money was deposited into three different accounts in a possible attempt at mitigating the risk of detection by law enforcement and/or arousing the suspicion of bank personnel.

20. Examples of cash deposits (not all-inclusive) conducted by ALSHAFEY since January 1, 2021 are listed below.

| Date | Acct 9626 | Acct 2818 | Acct 7076 |
|---|---|---|---|
| 4/9/2021 | 20700 | | |
| 4/7/2021 | | 13250 | 10600 |
| 3/26/2021 | 69300 | | |
| 2/8/2021 | 20650 | | |
| 1/24/2021 | 30500 | 9400 | 6660 |
| 1/21/2021 | 19450 | 13700 | 9800 |
| 1/20/2021 | 10300 | 11440 | 5740 |
| 1/20/2021 | | 3510 | |
| 1/18/2021 | | 19400 | |
| 1/18/2021 | 10700 | 18900 | |
| 1/17/2021 | 15800 | | |
| 1/15/2021 | 12800 | 20850 | |
| 1/14/2021 | 9100 | 7650 | 8200 |
| 1/12/2021 | 9200 | 9500 | 6000 |
| 1/7/2021 | 10150 | 9650 | 9000 |
| 1/6/2021 | 10420 | 20780 | 4600 |
| 1/2/2021 | 11850 | 8100 | 17900 |

AFFIANT

**A Search Warrant Return must be filed with the Prosecutor's Office for every Search Warrant which is authorized.**

**Subscribed and sworn to before me and issued under my hand this 28th Day of April, 2021.**

**Approved:**

/s/ Anna Bickerstaff P82215 - 4/28/2021

**Assistant Prosecuting Attorney**
**Page 10 of 15**

Judge/Magistrate
County of Wayne

State of Michigan                                                                                                    Page 11

County of Wayne

SEARCH WARRANT

DEA Detroit Special Agent Louis Scirri Jr., affiant states that:

21. On April 22, 2021, Affiant queried the Michigan Department of Licensing and Regulatory
Affairs for information related to Medpro Pharmacy, LLC. The registered agent was listed as
Zaman ALSHAFEY, 15580 Middlebelt Road, Livonia, Michigan. March 1, 2019 was listed as
the date the LLC was "in existence but not in good standing." On April 21, 2021 at
approximately 11:15AM, TFO Janowicz drove by 15580 Middlebelt Road in Livonia and
observed that a business labeled "MEDPRO PHARMACY" was closed and a large dumpster
was in front of the business.

22. According to DEA's Registrant Information Consolidated System (RICS), MEDPRO
PHARMACY LLC (MEDPRO) is registered as a retail pharmacy with the DEA under DEA
Number FM6493883 at 15580 Middlebelt Road, Livonia, MI 48154. Under this registration,
MEDPRO is currently authorized to handle controlled substances in schedules 2-5, and has been
registered with the DEA at this address since December 23, 2016. The contact name and "e-
signature" for this registration has always been listed as Zaman ALSHAFEY, with a current
contact cellphone number listed as (586) 864-0151.

23. A check with the Michigan Automated Prescription System (MAPS) indicated that the last
controlled substance prescription dispensed by MEDPRO under DEA Number FM6493883 was
on April 16, 2020. Additionally, MAPS reports indicated MEDPRO dispensed a total of 528
controlled substance prescriptions between 2017 – Present: 2017 (284 prescriptions); 2018 (210
prescriptions); 2019 (26 prescriptions); 2020 (8 prescriptions); and 2021 (0 prescriptions).

24. On April 22, 2021, Affiant subpoenaed Verizon Wireless for subscriber and toll information
related to phone number 586-864-0151 suspected of being utilized by ALSHAFEY. Results are
pending.

25. On April 22, 2021, Dearborn Police Officers conducted surveillance of ALSHAFEY at Medpro
Pharmacy, 15580 Middlebelt Road, Livonia, Michigan. The business was closed to the public
and had a large dumpster in front of the business entrance. At approximately 4:00PM, Officers
observed a U-Haul truck driven by an African American male pull into the parking lot and park
in front of the business. The male exited the truck and entered the front door of the business
carrying a bag. Shortly thereafter, Officers observed ALSHAFEY load approximately 30-40

**AFFIANT**

**A Search Warrant Return must be filed with the Prosecutor's Office for every Search Warrant which is authorized.**

**Subscribed and sworn to before me and issued under my hand this 28th Day of April, 2021.**

**Approved:**

/s/ Anna Bickerstaff P82215 - 4/28/2021

**Assistant Prosecuting Attorney**                                    **Judge/Magistrate**
**Page // of / 3**                                                                **County of Wayne**

State of Michigan

Page 12

County of Wayne

### SEARCH WARRANT
DEA Detroit Special Agent Louis Scirri Jr., affiant states that:

boxes from Medpro Pharmacy into the U-Haul. The U-haul departed the area a short time later. ALSHAFEY went back inside the business.

26. Affiant is aware that the Dearborn Police Department has had prior interactions with ALSHAFEY at 22241 Michigan Avenue, #221E, Dearborn, Michigan.

27. On March 6, 2021, Dearborn Police Officers were dispatched to 22241 Michigan Avenue, #221E, Dearborn, Michigan for a domestic violence complaint. ALSHAFEY (resident) was present at the location. ALSHAFEY was arrested for simple assault and subsequently released. There are no charges pending from the incident. While at the loft, Officers observed an open box containing multiple banded bundles of US currency (not seized). ALSHAFEY told Officers his cell number was 586-864-0151.

28. On April 10, 2021, Dearborn Police Officers were dispatched to 22241 Michigan Avenue, #221E, Dearborn, Michigan for family trouble. No arrests were made. ALSHAFEY was present.

29. On April 27, 2021, Dearborn Police Detective Sanders spoke with ALSHAFEY at 586-864-0151 regarding the prior domestic violence incident. ALSHAFEY confirmed that he currently resided at 22241 Michigan Avenue, #221E, Dearborn, Michigan.

30. Based on Affiant's training and experience, the seizure of bulk quantities of promethazine, promethazine with codeine, and other controlled substances pursuant to search warrants executed on February 11, 2021 at residences associated with Reginald and Recko MCCLINTON, text messages between the phone number suspected of being utilized by ALSHAFEY and Reginald MCCLINTON, and surveillance of ALSHAFEY, Affiant believes that ALSHAFEY is currently illegally distributing Promethazine and/or Promethazine with Codeine.

31. Affiant knows from training and experience that suspected drug distributors and/or money launderers may maintain evidence of their illegal activities including – but not limited to - electronic communications, financial records, shipping receipts, bulk currency (narcotics proceeds), and/or assets purchased with narcotics proceeds in multiple residences and vehicles associated with these residences.

**AFFIANT**

**A Search Warrant Return must be filed with the Prosecutor's Office for every Search Warrant which is authorized.**

**Subscribed and sworn to before me and issued under my hand this 28th Day of April, 2021.**

**Approved:**

/s/ Anna Bickerstaff P82215 - 4/28/2021

**Judge/Magistrate**
**County of Wayne**

**Assistant Prosecuting Attorney**
**Page/2of/3**

SW_0105

State of Michigan                                                           Page 13

                          SEARCH WARRANT
County of Wayne        DEA Detroit Special Agent Louis Scirri Jr., affiant states that:

32. Affiant contends that evidence of ALSHAFEY's suspected drug distribution and money
    laundering currently exists at 22241 Michigan Avenue #221E, Dearborn, Michigan, 7030
    Oakman Boulevard, Dearborn, Michigan, and 15580 Middlebelt Road, Livonia, Michigan.

_____
                    **AFFIANT**

**A Search Warrant Return must be filed with the Prosecutor's Office for every Search Warrant which is authorized.**

**Subscribed and sworn to before me and issued under my hand this 28th Day of April, 2021.**

**Approved:**

 /s/ Anna Bickerstaff P82215 - 4/28/2021

**Assistant Prosecuting Attorney**              **Judge/Magistrate**
**Page/3of/3**                                   **County of Wayne**

SW_0106