UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                  CRIMINAL NO.   22-CR-20601

                                        HON. JONATHAN J.C. GREY

ZAMAN MOHAMMED ALSHAFEY,

    Defendant.
_____/

**GOVERNMENT'S RESPONSE AND INCORPORATED BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED UNDER A SEARCH WARRANT (ECF NO. 19)**

The United States of America, by and through its undersigned counsel responds to the defendant's Motion to Suppress Eidence. The defendant contends the evidence seized from the execution of search warrants at his residence located at 22XXX Michigan Avenue, Dearborn Michigan, and his mother's residence located at 70XX Oakman Boulevard, Dearborn, Michigan should be suppressed.

In lieu of litigating the issue regarding the evidence seized from the Michigan Avenue residence, the government concurs in the defendant's request to excise paragraph 27 from the affidavit. Further, the government will not seek to introduce any evidence seized from this residence. Since the government has concurred in the

1

request to excise the information and refrain from using the evidence seized, a *Franks* hearing is not required.

However, the government contends the remaining portions of the affidavit clearly establish probable cause and demonstrate "a fair probability that contraband or evidence of crime..." would be obtained from the Oakman Boulevard location. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The defendant's motion to suppress evidence from the Oakman Boulevard residence must fail because the defendant lacks standing to challenge the warrant. Even if the defendant had standing, the motion should be denied because the affidavit in support of the search warrant contains probable cause and established a sufficient nexus between the premise to be searched and the items to be seized. Even if the Court finds that the affidavit lacked probable cause, the good faith exception should apply.

I.      **Facts**

In April 2021, a joint task force of federal and state law enforcement officers executed a search warrant at a residence on Oakman Boulevard in Wayne County. Officers connected this residence as one of the locations where Zaman Alshafey could store financial records and other documents related to his drug trafficking activities and obtained a state search warrant for the location. (Gov. Ex. A).

2

The affidavit is detailed and written by a DEA Special Agent with fifteen years of law enforcement experience who has specific experience investigating drug and money laundering crimes. (Gov. Ex. A, pg. 3).

The affiant details his training and experience, explains the characteristics common to individuals who are involved in trafficking drugs, and describes the types of contraband generally found in a drug trafficker's home or stash house, such as large amounts of currency, financial records, receipts, firearms, drug ledgers, address books, papers, electronic devices, etc. (*Id.*, pg. 4).

The affidavit then explains how investigators identified Zaman Alshafey as a suspected drug trafficker, involved in the unlawful distribution of Promethazine and Promethazine with Codeine based upon evidence seized from the residence of two associates of Alshafey.

The affidavit details the seizure of 1,459 pints of Promethazine and 11 pints of Promethazine with Codeine from one associate and an additional 20 pints of Promethazine from a different associate. (*Id.* ¶¶ 1 and 2) The affidavit further outlines how the agents/officers learned through text messages that Alshafey was the likely source of supply for Promethazine and Promethazine with Codeine. A review of the seized phone revealed text messages between a number associated with Alshafey and his associate in which they referred to the purchase and cost for

3

"Woo" "Woohoo" and "Akor" street names for pharmaceutical companies that manufacture Promethazine and Promethazine with Codeine. (*Id.* ¶¶ 3 -5, and 10)

The affiant then notes that he was advised that Alshafey was selling prescription drugs and controlled substances through MedPro Pharmacy by law enforcement officers and was captured on surveillance loading boxes of Promethazine into a vehicle at MedPro Pharmacy. The driver was surveilled, and agents observed what appeared to be a drug transaction when she delivered several boxes to another individual. The driver of the vehicle was subsequently arrested in possession of 108 pints of Promethazine. And the individual she met with was subsequently arrested with 120 pints of Promethazine. (*Id.* ¶¶ 12 – 14). The investigators also observed Alshafey discarding items, including labels and an invoice, in the trash at MedPro Pharmacy, which were later retrieved during a trash pull. The numbers on the invoice matched the numbers on the boxes seized from the driver of the vehicle. (*Id.* ¶15).

The affiant then set forth the various address associated with Alshafey, to include MedPro Pharmacy and 70XX Oakman Boulevard. (*Id.* ¶ 16). The affidavit then set forth the evidence associated with Alshafey's suspected money laundering activates including structuring cash deposits in amounts less than $10,000 and cash deposits of approximately $1.3 million in a mere nine months. (*Id.* ¶¶ 17 -20).

4

The affidavit also details that during surveillance investigators observed Alshafey at the Oakman Boulevard residence. (*Id.* ¶ 11).

II. **Procedural history**

Alshafey was charged by a federal grand jury with ten counts of Wire Fraud in violation of 18 U.S.C. § 1343; two counts of Introduction of Misbranded Drug into Interstate Commerce in violation of 21 U.S.C. §§ 331(k), 353(b)(1), and 333(a)(2); and eight counts of Engaging in Monetary Transactions Exceeding $10,000 in Criminally Derived Property in violation of 18 USC § 1957.

III. **Argument**

   a. **The Defendant lacks standing to challenge the warrant because he did not have an expectation of privacy at the Oakman Boulevard residence**

Because Fourth Amendment rights are "personal," *see Rakas v. Illinois*, 439 U.S. 128, 140 (1978), the central inquiry is whether the defendant challenging the admission of evidence has shown a legitimate expectation of privacy in the place searched or the thing seized. *Katz v. United States*, 389 U.S. 347, 353 (1967). Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. *Rakas*, at 143 n.12.   A defendant has the burden of establishing his standing to challenge a

5

search or seizure in violation of the Fourth Amendment. *Rakas*, at 130 n.1. The defendant must satisfy a two-part test: 1) whether he manifested a subjective expectation of privacy in the object of the challenged search; and 2) whether society is prepared to recognize that expectation as legitimate. *California v. Ciraolo*, 476 U.S. 207, 211 (1986).

Whether a legitimate expectation of privacy exists in a particular place or item is a determination to be made on a case-by-case basis. *United States v. Brown*, 635 F.2d 1207, 1211 (6th Cir. 1980). Factors include whether the defendant has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises. *United States v. King*, 227 F.3d 732, 734 (6th Cir. 2000) (citations and internal quotations omitted).

Here, the Oakman Boulevard residence belonged to Alshfey's brother and there is no evidence to support a finding that the defendant had any privacy interest in his brother's residence. *United States v. Houston*, 965 F.Supp.2d 855, 876 (ED Tenn. 2013). *See, e.g., United States v. Jimmie Larry,* 129 Fed.Appx. 127, 130 (6th Cir.2005) (holding son lacked standing to contest search of his mother's apartment because he rarely made social visits, was not allowed in the apartment when she

6

was not there, maintained his own separate residence where he kept all his personal belongings and paid bills, was never an overnight guest, and was only present at his mother's when she called him "to do something").

In *United States v. Evans*, 2008 WL 5413067 (ED. MI. 2008), the defendant challenged the execution of a warrant at his mother's residence. In holding the defendant lacked standing to challenge the warrant, the court reasoned, "[t]his is not like a situation where a defendant is living on continuing occasions with his girlfriend and has clothing and personal effects at that location. Defendant used the house as a 'safe' house or a 'stash house' for guns, not as a residence, even part time." *Id.* at *2. Here, Alshafey has not set forth any evidence to suggest he resided with his brother. In fact, Alshafey told officers, just two days before the execution of the search warrant, that he resided at 22XXX Michigan Avenue. He further acknowledged in his motion that he resided at the Michigan Avenue location and officers could only enter the premises with his permission. (Motion: ECF. No. 19, Pg.ID 66).

Alshafey merely used his brother's residence to conceal his financial assets by utilizing the location as his mailing address, and to "stash" the ill-gotten gains of his unlawful drug trafficking crimes and nothing more. He has failed to offer sufficient evidence to support a finding that he manifested a reasonable expectation

7

of privacy in his mother's residence that society is willing to recognize as legitimate.

### b. The affidavit established probable cause and sufficient nexus between the premises to be searched and the items to be seized

Based upon the strong preference under the Fourth Amendment for searches conducted pursuant to warrants, the issuing magistrate's determination of probable cause is entitled to great deference. *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984). The Supreme Court has explained that, "probable cause is a fluid concept ─ turning on the assessment of probabilities in particular factual contexts ─ not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

A warrant may be issued if the magistrate judge concludes that it is likely that a crime has been committed and that evidence of the crime will be found in the place officers wish to search. The Supreme Court has not quantified the degree of certainty required for a probable cause determination, but its decisions teach that it is something less than a preponderance of the evidence and something more than "bare suspicion." *Greene v. Reeves*, 80 F.3d 1101, 1105 (6th Cir. 1996).

The standard of review for this Court is whether, granting great deference to the decision of the issuing magistrate judge, the evidence contained in the affidavit

8

viewed as a whole provided a substantial basis for the issuing magistrate judge's finding of probable cause to search 70XX Oakman Boulevard. *Massachusetts v. Upton*, 466 U.S. at 732; *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir. 1991).

The respective duties of the magistrate judge who issues the search warrant and the court which reviews the adequacy of the affidavit were set forth by the Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), as follows:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether given all of the circumstances set forth in the affidavit before him including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place and the duty of a reviewing court is to simply insure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

462 U.S. at 238-39, 103 S. Ct. at 2332.[1]

Since the issuing judge is in the best position to determine the circumstances in the light which they may appear at the time, "great deference" is normally paid to the determination of an issuing judge. "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *Id*.

The search warrant here authorized the seizure of items that were documentary in nature and assets, not controlled substances. The affidavit supporting the warrant for the Oakman Boulevard location contained sufficient probable cause. Probable cause means "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) *citing United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009). Probable cause depends on the totality of the circumstances, and is a practical, non-technical conception. (*Id*. *quoting Illinois v. Gates*, 462 U.S. 213, 231 (1983)). Courts review the sufficiency of a search warrant affidavit by using commonsense standard. *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004). Reviewing courts should not apply a de novo review, but rather are required to accord the magistrate's determination great deference and ask only whether the magistrate had a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. at 238.

Here the affidavit stated that Alshafey was involved in the unlawful distribution of Promethazine and Promethazine with Codeine, that he generated a large amount of cash in a short period of time that was not lawfully acquired from his pharmacy, that he was engaged in structuring those funds to avoid detection by bank employees and the authorities, and the account where he made the large cash

10

deposits listed the Oakman Boulevard residence as his mailing address.

"To justify a search the circumstances must indicate why evidence of illegal activity will be found in a 'particular place.' There must in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*quoting United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). The nexus between the place to be searched and the items to be seized may be established by the nature of the items and normal inferences as to where a person would keep such items. *United States v. Rosenbarger*, 536 F.2d 715, 719 (6th Cir.1976), *cert. denied*, 431 U.S. 965 (1977).

The affiant's extensive experience in the investigation of financial and drug trafficking crimes as set forth in the affidavit was sufficient for the magistrate to conclude that Alshafey would utilize his brother's residence in an effort to conceal and store evidence of his assets that were derived from his unlawful drug trafficking. It was also reasonable for the magistrate judge to conclude that records relating to Alshafey's financial assets would be found in the residence, as the affidavit provided information regarding affiant's extensive experience in investigating the financial aspects of drug trafficking and his professional opinion that drug traffickers keep financial records at their homes or other locations. See,

11

e.g. *United States v. Blair,* 214 F.3d 690, 696 (6th Cir. 2000).

In *United States v. Davidson*, 936 F.2d 856 (6th Cir.1991), the Court upheld a search even though no actual drug sales had been witnessed at a defendant's residence. We found that the defendant's conduct created a fair probability that he was engaged in drug trafficking. This Court allowed the search of defendant's residence because it was likely that evidence of drug trafficking would be found there. "[A] [M]agistrate is permitted to draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of the offense." *Id.* at 860 (citing *United States v. Terry*, 911 F.2d 272, 275 (9th Cir.1990)).

Courts have regularly held that it is proper for agents, who are trained and experienced in narcotics and money laundering investigations, to supply the "nexus" between the independently established criminal activity and the anticipated location of the fruits of that activity. *See United States v. Caicedo*, 85 F.d. 1184 (6th Cir. 1996) (In finding probable cause, great emphasis is placed upon affiant's experience). Therefore, an affidavit which contains an experienced agent's affirmation that drug traffickers frequently keep items such as financial records, drug proceeds, drug records, and firearms at their residence can justify a search of a residence. *See also*; *United States v. Martin*, 920 F.2d 393, 399 (6th Cir.1990)

12

(relying on statement of agent that "in his experience a person engaged in the distribution of cocaine frequently keeps at his residence a number of different items").

As in *Martin*, the affiant in this case noted that in his experience drug traffickers routinely keep address books, papers, financial records and U.S Currency. And that it is common to store or conceal these items at various locations. The affidavit provided sufficient facts and the requisite nexus to support a fair probability that documentation related to unlawful drug trafficking would be located at 70XX Oakman Boulevard. Consequently, there was adequate probable cause in support of the search warrant.

c. **Good Faith exception is applicable**

Even if the Court finds that the affidavit does not support probable cause, the good faith exception should apply. The Supreme Court has emphasized that the "sole purpose" of the exclusionary rule "is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236–37 (2011). Suppressing evidence is a "last resort," *Hudson v. Michigan*, 547 U.S. 586, 591 (2006), justified only where "the deterrence benefits of suppression . . . outweigh its heavy costs," *Davis*, 564 U.S. at 237. Suppression is warranted "[w]hen the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights,"

13

and not when they "act with an objectively reasonable good faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence." *Id*. at 238. Because of the Fourth Amendment's "strong preference for warrants," the classic example of good faith is when police act "in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 914, 922 (1984). When officers have a good faith reason to believe a warrant is valid—*i.e.*, "no reason to suspect the warrant was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"—the good faith exception applies, and the exclusionary rule cannot "pay its way." *Davis*, 564 U.S. at 238–39.

  Even where an affidavit contains a minimally sufficient nexus between the illegal activity and the place to be searched, the *Leon* exception applies. *United States v. Reed,* 993 F.3d 441 (6th Cir. 2021). A minimally sufficient nexus is one where there "is some connection, regardless of how remote it may have been— some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." (*Id*. at 451, *citing McCoy*, 905 F.3d at 416). In *Reed*, the Sixth Circuit found good faith where police had probable cause to believe that the defendant was a drug dealer who engaged in recent drug sales and lived at target residence. (*Id*.). There, the Sixth Circuit noted that when good faith is

14

rejected, it is generally because the police lacked reliable proof that the defendant was recently (or ever) engaged in drug dealing. (*Id.*).

Good faith applies here. The Special Agent did exactly what the Fourth Amendment requires: present a neutral magistrate with "indicia of probable cause" to believe that evidence of a crime would be found from searching the Oakman Boulevard residence connected to Alshafey's drug trafficking. In addition, the affiant relied on his training and experience, participation in numerous drug cases, and his career as a law enforcement officer. In *Reed*, the Sixth Circuit noted that the affiant's experience, "at least provides another reason to trigger" the good faith exception. (*Reed*, 993 F.3d at 452). Under a totality of the circumstances, the good faith exception should apply.

### c. Michigan Avenue location

On March 6, 2021, officers of the Dearborn Police Department responded to the Michigan Avenue location to investigate a domestic violence claim made by the defendant's wife (domestic partner). Alshafey and his wife were both residing in the residence at the time. While in the loft, the officers received information that an additional crime was ongoing, and evidence of that crime may be found in the closet. The officers without obtaining a warrant, walked into the closet area and made observations. The government notes the officers should have obtained a

warrant before proceeding to the closet. Therefore, the government concurs in the removal of paragraph 27 from the affidavit, however, the government contends the remainder of the affidavit provides sufficient probable cause.

## CONCLUSION

Accordingly, the government respectfully submits that defendant's motion to suppress evidence seized from the execution of a search warrant at 70XX Oakman Boulevard should be denied.

                                        Respectfully submitted,

                                        DAWN N. ISON
                                        United States Attorney

                                        s/Regina R. McCullough
                                        REGINA R. McCULLOUGH (P64936)
                                        Assistant U.S. Attorney
                                        Chief, Health Care Fraud Unit
                                        211 W. Fort, Suite 2001
                                        Detroit, MI 48226
                                        Phone: (313) 226-9618
                                        Email: regina.mccullough@usdoj.gov

Date: May 19, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2023, I caused a copy of the foregoing to be served on all counsel of record using the Court's ECF filing system.

s/REGINA R. McCULLOUGH
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI   48226
Phone: (313) 226-9618
Email: regina.mccullough@usdoj.gov
